**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**SEATTLE DIVISION**

| | |
|---|---|
| RACHELLE PESCADOR, individually and on behalf of all others similarly situated,<br>Plaintiff,<br>v.<br>KOHL'S, INC., a Delaware corporation,<br>Defendant. | Case No.<br>**DEFENDANT'S NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT**<br>[Clerk's Action Required] |

**TO: CLERK OF THE COURT**

**AND TO: ALL PARTIES OF RECORD**

PLEASE TAKE NOTICE that, pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(a) and 1332(d), and 28 U.S.C. §§ 1441, 1446, and 1453, Defendant Kohl's, Inc. ("Kohl's") removes to this Court the above-styled class action, which is currently pending as Case No. 25-2-23154-2 SEA in the Superior Court for the State of Washington for the County of King ("King County Superior Court"). As the grounds for removal, Kohl's states as follows:



OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

## I. PROCEDURAL BACKGROUND

1. On August 11, 2025, Plaintiff Rachelle Pescador ("Plaintiff") filed a Class Action Complaint for Unpaid Wages (the "Complaint") against Kohl's, Inc. in King County Superior Court, captioned *Rachelle Pescador v. Kohl's, Inc.* (Case No. 25-2-23154-2 SEA) (the "State Court Action"). Declaration of E. Ashley Paynter ("Paynter Decl.") ¶ 2., Ex. 1 ("Complaint").

2. A copy of the Complaint and Summons were served on Kohl's on August 15, 2025. Paynter Decl. ¶ 3, Ex. 2.

3. At Paragraph 4.1, the Complaint asserts claims on behalf of the following putative class (the "Class"):

> All hourly-paid or non-exempt employees of Defendant in the State of Washington at any time during the period from three years preceding the filing of this Complaint to final disposition of this action.

4. The Complaint asserts that Plaintiff and putative class members have brought this State Court Action to recover alleged unpaid wages, exemplary damages, attorneys' fees and costs, and pre- and post-judgment interest. *See* Complaint at XIV.

5. Plaintiff alleges generally that Kohl's has failed to ensure that employees received rest breaks, meal breaks, appropriate minimum wages for all hours worked, overtime wages, paid sick leave, and wages due at termination, amongst other claims, as required by Washington law. *See* Complaint at ¶¶ 5.2, 5.9, 5.15, 5.19, 5.26, and 5.31.

6. Plaintiff asserts eight claims for relief: (i) failure to provide rest periods in violation of RCW 49.12.020 and WAC 296-126-092; (ii) failure to provide meal periods in violation of RCW 49.12.020 and WAC 296-126-092; (iii) failure to pay overtime wages in violation of RCW 49.46.130; (iv) payment of wages less than entitled in violation of RCW 49.46.090; (v) failure to accrue and allow use of paid sick leave in violation of RCW 49.46.210 and WAC 296-128-620; (vi) unlawful deductions and rebates in violation of RCW 49.52.060 and WAC 296-126-028; (vii)


OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

failure to pay wages due at termination in violation of RCW 49.48.010; (viii) willful refusal to pay wages in violation of RCW 49.52.050. *See* Complaint at VI, VII, VIII, IX, X, XI, XII, XIII.

7. In connection with these claims, Plaintiff seeks damages for her and the putative class members alleged lost wages in an amount to be proven at trial; exemplary damages in amounts equal to the wages allegedly due to Plaintiff and the putative class members under RCW 49.52.070; attorney fees, costs, and expenses under RCW 49.46.090, RCW 49.52.070, and pre- and post-judgment interest. *See* Complaint at VI, VII, VIII, IX, X, XI, XII, XIII.

8. On November 3, 2025, Plaintiff served an individual settlement demand, a true and accurate copy of which is attached to the Paynter Declaration. That settlement demand illustrates that the case is also removeable under 28 U.S.C. § 1332(a).

## II. PROCEDURAL REQUIREMENTS

9. Venue. This Court is in the judicial district and division embracing the place (King County, Washington) where the state court case was brought and is pending. Thus, it is the proper district court for removal. *See* 28 U.S.C. §§ 1441(a), 1446(a). In addition, because Plaintiff has alleged her claims arose in Redmond, Washington, which is in King County, venue is proper in the Western District of Washington at Seattle. *See* Local Civil Rule 3(e)(1).

10. Removal is Timely. Plaintiff's initial pleading, on its face, is indeterminate with respect to removability and thus neither §§ 1441 or 1446 is triggered. This Notice of Removal is timely in that it is being filed under the Class Action Fairness Act after reasonable investigation suggests removal is possible. *Roth v. CHA Hollywood Med. Ctr., LP.*, 720 F.3d 1121,1125 (9th Cir. 2013). The Notice of Removal is likewise timely because it is filed within thirty (30) days of Kohl's receipt of Plaintiff's individual settlement demand, which sets forth Plaintiff's understanding of the amount in controversy with respect to her individual claim.

11. Notice. Concurrently with the filing of this Notice of Removal, Kohl's is giving written notice of removal to Plaintiff and filing a copy of this Notice of Removal with the Clerk of the King County Superior Court, pursuant to 28 U.S.C. § 1446(d).



OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

12. Pleading and Process. True and correct copies of the pleadings on file in the State Court Action, including a current docket sheet, are attached. Paynter Decl. ¶ 9, Ex. 1-7. *See* 28 U.S.C. § 1446(a). The appropriate filing fee is being paid to the Clerk of this Court upon the filing of this Notice.

## III. REMOVAL IS TIMELY

13. The time to remove under 28 U.S.C. section 1446(b) does not begin to run until receipt by the defendant, through service or otherwise, of a pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable. *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005). Defendant is not obligated to investigate or develop additional facts as to removability upon receipt of the Complaint. *Id.* ("[N]otice of removability… is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry" by Defendant.).

14. The Ninth Circuit has repeatedly upheld *Harris* in subsequent cases. In *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136 (9th Cir. 2013), the Ninth Circuit emphasized that defendants are not "saddl[ed] with the burden of investigating jurisdictional facts" as to removability. In *Roth v. CHA Hollywood Medical Center, LP.*, 720 F.3d 1121, 1125 (9th Cir. 2013), the Court explained that when defendants do conduct such an investigation, 28 U.S.C. §§ 1441 and 1446 "read together, permit a defendant to remove outside the two thirty-day periods on the basis of its own information." Any argument that defendants could have removed a case earlier based on information contained within its own records fails.

15. Here, the four corners of the Complaint do not provide readily ascertainable grounds for removal. The Complaint does not allege sufficient facts to calculate the amount in controversy with reasonable certainty as to the individually named plaintiff or as to the putative class. The Complaint does not provide an estimate as to the number of putative class members, their average hourly rate of pay, the frequency of alleged violations of Washington law, nor


OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

estimates as to Plaintiff's own experiences. *See, Complaint, passim*. Accordingly, the time to remove did not begin at the service of the complaint and Defendant may remove based upon its own investigation. *Harris, supra*, 425 F.3d at 694.

16. However, on November 3, 2025, Plaintiff sent an individual settlement demand to Kohl's in the amount of approximately $116,000. The calculations in the demand reveal that Plaintiff believes her individual damages, including attorneys' fees, to be in excess of $90,000. *See* Paynter Decl., ¶ 10, Ex. 8.

## IV. <u>THIS COURT HAS SUBJECT MATTER JURISDICTION UNDER 28 U.S.C. § 1332(a)</u>

17. Diversity jurisdiction exists in all civil actions where "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between the citizens of different states." 28 U.S.C. § 1332(a).

18. As set forth below, Kohl's is a citizen of Wisconsin and Delaware. *See* ¶ 34, *infra*.

19. As set forth below, Plaintiff is a citizen of the State of Washington. *See* ¶ 30, *infra*.

20. In her individual settlement demand, Plaintiff asserts that she suffered from "an almost 100% violation rate on her rest and meal breaks," and performed an additional hour of off-the-clock work each week, unrelated to her meal and rest break claim, which she presumably seeks to recover in connection with her minimum wage or unlawful deductions and rebates claims. Accordingly, Plaintiff alleges that she is entitled to unpaid wages in the amount of $20,326.08.

21. Plaintiff further contends that Kohl's failure to pay these wages was willful, which she claims entitles her to exemplary damages in an amount equal to her unpaid wages. *See* Paynter Decl., ¶ 10, Ex. 8; RCW 49.52.70. Therefore, Plaintiff alleges that her meal and rest break and off-the-clock claims place at least $40,652.16 in controversy. Plaintiff was careful to explain in her settlement demand that she has additional claims the damages for which she did not include in her demand, which suggests that the amount she actually seeks in unpaid wages on her individual claim is in excess of the $40,652.16 she demanded in her letter.



OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

22. Plaintiff also seeks attorney's fees under multiple statutes, including RCW 49.52.070, and fees may therefore be considered for purposes of calculating the amount in controversy. *See e.g.* Complaint ¶13.4.

23. At this early stage in the litigation, Ms. Pescador demands $55,000 in attorneys' fees to resolve her individual claim, which places the total amount in controversy in this lawsuit based on Ms. Pescador's claims alone, at $95,652.16, well in excess of $75,000.

## V. THIS COURT ALSO HAS SUBJECT MATTER JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

24. Congress passed CAFA "primarily to curb perceived abuses of the class action device." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090 (9th Cir. 2010). "To achieve its purposes, CAFA provided expanded original diversity jurisdiction…." *Id.* at 1090-91. There is no presumption against removal under CAFA, *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014), and "courts should apply the same liberal rules to removal allegations that are applied to other matters of pleading." *Id.* at 87 (citing 28 U.S.C. § 1446(a)).

25. Pursuant to CAFA, district courts "shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which…any member of a class of plaintiffs is a citizen of a State different from any defendant…." 28 U.S.C. § 1332(d)(2)(A). For the purposes of determining whether the amount in controversy requirement is met, "claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs." 28 U.S.C. § 1332(d)(6).

26. Although Kohl's denies that Plaintiff will be able to satisfy the standards for class certification, the State Court Action satisfies CAFA's jurisdictional requirements. This lawsuit is


OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

a putative class action.[1] Removal based on the CAFA is proper pursuant to 28 U.S.C. §§ 1441, 1446, and 1453 because (1) minimal diversity of citizenship exists between the Plaintiff and Kohl's; (2) there are more than 100 members of the putative class; and (3) the Complaint places in controversy more than $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2), (d)(5)(B); *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 788 (9th Cir. 2018).

27. Kohl's denies Plaintiff's factual allegations and denies that Plaintiff – and the putative class she purports to represent – is entitled to the relief requested in the Complaint. However, based on Plaintiff's allegations in the Complaint, as well as Kohl's investigation into Plaintiff's class action allegations, all requirements for jurisdiction under CAFA have been met in this case.

**A. Minimal Diversity of Citizenship Exists Between Kohl's and Plaintiff.**

28. CAFA's diversity requirement is satisfied so long as any putative class member is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2); *see also*, *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co*., 602 F.3d 1087, 1090–91 (9th Cir. 2010) (finding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)).

29. Minimal diversity exists under 28 U.S.C. § 1332(d)(2) because Plaintiff and Kohl's are citizens of different states.

30. ***Plaintiff is a Citizen of Washington State for Removal Purposes***. "An individual is a citizen of the state in which he is domiciled." *Boon v. Allstate Ins. Co*., 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (citing *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001)). For purposes of diversity jurisdiction, citizenship is determined by an individual's domicile when suit was filed. *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986). Domicile is determined by a

---

[1] Kohl's denies and reserves the right to contest Plaintiff's contention that this action can properly be certified as a class action.



OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

person's 1) state of residence, and 2) intent to remain or return. *Adams v. W. Marine Prods*., 958 F.3d 1216, 1221 (9th Cir. 2020) (person's residence constitutes some evidence of domicile). "A party with the burden of proving citizenship may rely on the presumption of continuing domicile, which provides that, once established, a person's state of domicile continues unless rebutted with sufficient evidence of change." *Id*. (internal quotation omitted).

31. In the Complaint, Plaintiff alleges she is "a resident of Washington." Complaint ¶13. Plaintiff further alleges that "Defendant employed Plaintiff as an hourly-paid or non-exempt employee in the State of Washington." Complaint ¶4.4 Plaintiff's residence and employment in Washington creates the presumption of Washington domicile and she is, therefore, a citizen of the State of Washington for removal purposes. *See State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 519 (10th Cir. 1994) (citing *Lew*, 797 F.2d at 751).

32. Additionally, members of the putative Class are, or were, by definition, "employees of Defendant in the State of Washington," Complaint ¶4.1, and are presumed to be primarily citizens of the State of Washington for removal purposes. *Lew*, 797 F.2d at 750 (9th Cir. 1986) (a person's "place of employment" weighs in favor of citizenship). Thus, the putative class members may be presumed citizens of Washington for removal purposes.

33. ***Kohl's is Not a Citizen of Washington State.*** Kohl's is a corporation. "For purposes of diversity, a corporation is a citizen of its state of incorporation and of the state where its principal place of business (i.e., its 'nerve center') is located." *Robertson v. GMAC Mortg., LLC*, 640 F. App'x 609, 611 (9th Cir. 2016) (citing 28 U.S.C. § 1332(c)(1) and *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81, 130 S. Ct. 1181, 175 L. Ed. 2d 1029 (2010)).

34. Kohl's is incorporated in Delaware and its principal place of business is in Wisconsin, making it a citizen of Wisconsin and Delaware for jurisdictional purposes. 28 U.S.C. § 1332(c)(1). The majority of Kohl's executives and administrative functions, including operations management, human resources, finance, information technology, business operations, and its legal


OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

and marketing functions, are based out of its headquarters in Wisconsin. Therefore, at all material times, Kohl's was and is a citizen of Wisconsin, as well as Delaware, its state of incorporation.

35. As Plaintiff and Kohl's are citizens of different states, minimal diversity is satisfied. In fact, although not required by CAFA, complete diversity is satisfied.

**B. <u>Putative Class Membership Exceeds 100 Individuals.</u>**

36. CAFA's requirement that the proposed class membership be no less than 100 members is satisfied here because the putative class has more than 100 members. *See* 28 U.S.C. § 1332(d)(5).

37. Plaintiff defines the proposed class to include all hourly-paid or non-exempt Kohl's employees working in Washington during the three years preceding the filing date of this Action. *See* Complaint at 4.1.[2]

38. Kohl's employment records show that it employed more than 500 hourly-paid or non-exempt employees in the State of Washington from August 11, 2022 through August 11, 2025.

**C. <u>The Amount in Controversy Exceeds $5,000,000.</u>**

39. Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(6).

40. A removing defendant's notice of removal must contain only "a short and plain statement of the grounds for removal." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 83 (2014).

41. The "defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 89. "[D]efendants do not need to prove to a legal certainty that the amount in controversy requirement has been met. Rather, defendants may simply allege or assert that the jurisdictional threshold has been met." *Id.* at 89–

---

[2] Kohl's reserves the right to oppose class certification and to dispute Plaintiff's class definition.



OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

90 (quoting H.R. Rep. No. 112–10, p. 16 (2011)). There is no presumption against removal in cases invoking CAFA because Congress intended to "facilitate adjudication of certain class actions in federal court." *Id.* at 87.

42. Where, as here, the plaintiff has not pled the amount of damages that they seek in the Complaint, the Court may consider facts beyond the Complaint to determine whether the lawsuit meets the jurisdictional requirement.[3] *See Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 690 (9th Cir. 2006) (citing *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).

43. The burden of showing the amount-in-controversy meets the federal jurisdictional threshold "is not a daunting one. . . [A] removing defendant is not obligated to completely 'research, state, and prove the plaintiff's claims for damages.'" *54-40 Brewing Co. LLC v. Truck Ins. Exch.*, No. C21-5586, 2021 WL 6124788, at *2 (W.D. Wash. Dec. 28, 2021) (quoting *Korn v. Polo Ralph Lauren Corp*., 536 F. Supp. 2d 1199, 1204–05 (E.D. Cal. 2008)).

44. Moreover, in assessing whether the amount in controversy requirement has been satisfied, "a court must 'assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.'" *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 648 (9th Cir. 2012) (quoting *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)). Indeed, the focus of the Court's inquiry must be on "what amount is put 'in controversy' by the plaintiff's complaint, not what a

---

[3] This Notice of Removal addresses the nature and amount of damages the Complaint places in controversy. Kohl's refers to specific damages estimates and cites to comparable cases solely to establish that the amount in controversy exceeds the jurisdictional minimum. Kohl's maintains that each of Plaintiff's claims lack merit and that Kohl's is not liable to Plaintiff or any putative class member in any amount whatsoever. No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiff will or could actually recover any damages based upon the allegations contained in the Complaint or otherwise. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Defendant's] liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).


OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

defendant will actually owe." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (citing *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005)).

36. Here, Plaintiff alleges that Kohl's was "engaged in a common course" of practices and policies which resulted in wage and hour violations. Complaint §V. A "common course" is commonly understood to refer to actions "occurring, found, or done often; prevalent among the members of a society; usual, frequent" or the "routine or established procedure; the usual way or custom." Oxford English Dictionary, "common" "course (n.1 & adv.1)," September 2025, https://doi.org/10.1093/OED/9705514042.

37. Moreover, here, Plaintiff contends she suffered "almost 100%" violation rate for meal and rest breaks as well as an extra hour per week of off-the-clock time unrelated to meal and rest break violations. *See* Paynter Decl., ¶ 10.

38. Thus, it is reasonable for Kohl's to assume up to a 100% violation rate for each of Plaintiff's claims across the putative class for removal purposes. *See, e.g.*, *Lewis*, 627 F.3d at 398-401; *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1239 (9th Cir. 2014) (per curiam); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (holding where plaintiff did not submit any evidence as to violation rates, "assumption of a 100 percent violation rate may have been reasonable based on the allegations in the Complaint," which "offered no guidance as to the frequency of the alleged violations, only that [d]efendant had 'a policy and practice' of meal and rest period violations"); *Lopez v. Aerotek, Inc.*, No. SACV 14-00803-(CJGx), 2015 WL 2342558, at *3 (C.D. Cal. May 14, 2015) (finding "Aerotek could have logically assumed a 100 percent violation rate because Plaintiff does not qualify his allegations" and "[a]lthough afforded the opportunity to do so on this motion, Plaintiff does not assert or suggest an alternative violation rate on which the Court should rely"); *Perez v. Rose Hills Company*, 2025 WL 811096 (C.D. Cal. March 14, 2025) (approving a violation rate of one hour of minimum wage, one hour of overtime, one meal period violation and one rest period violation every week of the class period was


OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

reasonable based upon allegations in the Complaint that violations occurred "at times" and consistent with the employer's "pattern and practice").

39. Although Kohl's denies Plaintiff's claims have any merit, whatsoever, if Plaintiff were to prevail on just her First Claim for Relief ("Rest Period Claim") and Second Claim for Relief ("Meal Period Claim") and Eighth Claim for Relief ("Willfulness Claim") on behalf of the putative class, the requested monetary recovery would exceed CAFA's monetary threshold. Because the amounts in controversy for these three claims alone exceed the jurisdictional minimum requirement of $5 million, Kohl's does not include additional analyses for estimates of the amounts placed in controversy by Plaintiff's remaining claims.

40. Plaintiff's complaint did not specify an amount in controversy. *See* Complaint, *passim.*

41. Plaintiff alleges Kohl's had a policy and practice of failing to provide Washington compliant meal periods in a "common course." Complaint ¶¶ 5.9 – 5.14. The Complaint does not specify how often Plaintiff and the putative class members were allegedly denied meal break periods.

42. For purposes of this jurisdictional analysis only, then, Kohl's relies on Plaintiff's allegation that violations occurred in a "common course" and compensation is owed. *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 399 (9th Cir. 2010) ("[I]n determining the amount [in controversy], we first look to the complaint."); *Heejin Lim v. Helio, LLC*, No. CV 11-9183 PSG (PLAx), 2012 WL 359304, at *2 (C.D. Cal. Feb. 2, 2012) ("The ultimate inquiry is, therefore, what amount is put 'in controversy' by the plaintiff's complaint or other papers, not what the defendant will actually owe for the actual number of violations that occurred, if any.") (internal citations omitted). As well as her subsequent representation that she suffered "almost 100%" violation rate of her meal and rest periods.

43. As the Complaint does not include any allegations limiting the number of alleged meal or rest period violations, Kohl's may assume a 100% violation rate. *Lewis*, 627 F.3d at 398-



OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

401; *Rea*, 742 F.3d at 1239; *Bryant*, 284 F. Supp. 3d at 1151; *Stevenson v. Dollar Tree Stores, Inc.*, No. CIV S-11-1433 KJM DAD, 2011 WL 4928753, at *3-4 (E.D. Cal. Oct. 17, 2011) (defendant's calculation of potential missed meal period damages at 100% of the shifts was appropriate where plaintiff alleged that class members were routinely denied meal periods or were not compensated for meal periods). However, as set forth below, Kohl's need not assume 100% violation rates to satisfy the CAFA threshold.

**1. Plaintiff's Meal Period Claim Places at Least $1,661,286.44 in Controversy.**

44. Per WAC 296-126-092, "(1) Employees shall be allowed a meal period of at least thirty minutes which commences no less than two hours nor more than five hours from the beginning of the shift. Meal periods shall be on the employer's time when the employee is required by the employer to remain on duty on the premises or at a prescribed work site in the interest of the employer. (2) No employee shall be required to work more than five consecutive hours without a meal period. (3) Employees working three or more hours longer than a normal work day shall be allowed at least one thirty-minute meal period prior to or during the overtime period."

45. Kohl's conducted a preliminary review of its employment, payroll, and timekeeping records for Washington-based hourly employees working between August 11, 2022 and August 11, 2025.

46. The average hourly wage across the putative class during the class period is approximately $18.11.

47. Kohl's identified all shifts exceeding five hours in duration during the putative class period. Kohl's identified approximately 305,777 shifts meeting this criterion.

48. Kohl's assumes for removal purposes only, that employees receiving non-compliant meal periods are entitled to 30 minutes of wage at their regular rate of pay.

49. Thus, at a 100% violation rate the amount in controversy for the Meal Period Claim alone is $2,768,810.74 (average wage divided by two and then multiplied by the total number of shifts over five hours).



OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

50. Here, Plaintiff's demand letter sheds further light on her understanding of the alleged violation rate. Indeed, she believes that she suffered a violation rate of "almost 100%" with respect to her meal and rest breaks.

51. A 60% violation rate, which is considerably more conservative than the "almost 100%" violation rate that Plaintiff claims she suffered in her demand letter, places $1,661,286.44 in controversy for her Meal Period Claim.

52. Courts have permitted the assumption of up to 60% violation rates when complaints allege a company-wide practice of failing to provide compliant meal breaks, along with no allegations concerning the frequency of the violations. *See Sanchez*, 2021 WL 2679057 at *4-5 (finding 60% violation rate for meal and rest break claims to be appropriate based on complaint's "pattern and practice" allegation that resulted in unpaid meal and rest period premiums to some "but not all" class members); *Bryant*, 284 F. Supp. 3d at 1151 (holding complaint alleging policy and practice of meal and rest period violations with no guidance as to frequency justifies estimate of at least three missed meal periods and three missed rest periods per week and up to five missed meal periods and five missed rest periods per week); *Stanley*, 2017 WL 6209822 at *2 (finding assumption of three violations per week reasonable where complaint alleged defendant "engaged in a 'pattern and practice' of wage and hour violations" but "provides almost no allegations concerning the frequency of the alleged violations, and [plaintiff] provides no competing evidence that would suggest lower violation rates"); *Navarro v. Servisair, LLC*, No. C 08-02716 MHP, 2008 WL 3842984, at *9 (N.D. Cal. Aug. 14, 2008) (assuming three weekly meal violations reasonable where plaintiff "[did] not limit his claim by stating that only a certain number of hours went uncompensated").

53. Thus, Kohl's assumption of a 60% violation rate is reasonable as a matter of law. Defendants are not "required to comb through [their] records to identify and calculate the exact frequency of violations." *Rodriguez v. USF Reddaway, Inc.*, No. 2:21-cv-02270-TLN-DB, 2022 WL 3274345, at *5 (E.D. Cal. Aug. 11, 2022) (noting courts have found "violation rates of 25%


OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

to 60% can be reasonably assumed as a matter of law" based on policy and practice allegations). "[R]equiring Defendants to forecast an exact violation rate would essentially force a removing defendant to prove the plaintiff's case." *Thomas v. Aetna Health of Cal., Inc.*, No. 1:10-CV-01906-AWI, 2011 WL 2173715, at *20 (E.D. Cal. Jun. 2, 2011) (internal citations omitted).

**2. Plaintiff's Claim that Kohl's Violated RCW 49.52.050 Doubles the Amount in Controversy for Meal Periods**

54. Plaintiff alleges that Kohl's "willfully" deprived the putative class of wages owed by violations of Washington's wage and hour laws, including failure to provide compliant meal periods. *See* Complaint ¶¶13.3-13.4. Plaintiff alleges that such willfulness results in double damages. Complaint ¶13.4. Accordingly, Plaintiff's Meal Period Claim when considered in combination with Plaintiff's allegation that these violations are willful, calculated at the 60% violation rate conservative wage and violation rates places approximately $3,322,572.88 in controversy.

**3. Plaintiff's Rest Period Claim Places at Least $554,067.92 in Controversy.**

55. According to Washington Administrative Code 296-126-092, "Employees shall be allowed a rest period of not less than ten minutes, on the employers time, for each four hours of working time."

56. As alleged in the complaint, Kohl's assumes for the purpose of removal that employees who did not receive a compliant rest period are entitled to ten minutes of compensation at their regular rate.

57. Looking only at shifts greater than 5 hours, a 100% violation rate places approximately $923,446.54 in controversy (one missed rest period at ten minutes of compensation at $18.11/hr times the total number of shifts). A more conservative 60% violation rate places $554,067.92 in controversy.

//

//



OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

**4. Plaintiff's Claim that Kohl's violated RCW 49.52.050 Doubles the Amount in Controversy for Rest Periods.**

58. Plaintiff alleges that Kohl's "willfully" deprived the putative class of wages owed by violations of Washington's wage and hour laws, including failure to provide compliant meal periods. *See* Complaint ¶¶13.3-13.4. Plaintiff alleges that such willfulness results in double damages. Complaint ¶13.4. Accordingly, Plaintiff's Rest Period Claim when considered in combination with Plaintiff's allegation that these violations are willful, calculated at the 60% violation rate conservative wage and violation rates places approximately $1,108,135.84 in controversy.

**5. Plaintiff's Claim for Attorneys' Fees Places at Least $1,113,061.92 in Controversy.**

59. Courts have held that an award of attorneys' fees, if such fees are authorized under applicable law, should be considered for purposes of calculating the amount in controversy. *See McGraw v. GEICO Gen. Ins. Co.*, No. C16-5876, 2017 WL 1386085, at *3 (W.D. Wash. Apr. 18, 2017) (concluding "that, whether the [attorneys'] fees are authorized by contract, statute, or case law, they may be included in the amount in controversy"); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155–56 (9th Cir. 1998) ("We hold that where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."); *see also Kido as trustee for Kido v. Transamerica Life Ins. Co.*, No. C19-1858, 2020 WL 428978, at *3 (W.D. Wash. Jan. 28, 2020) (calculating attorneys' fees for inclusion in the amount in controversy); *Skau v. JBS Carriers, Inc.*, No. C18-681, 2018 WL 6804315, at *2 (W.D. Wash. Dec. 27, 2018) (concluding "it is more likely than not that the attorneys' fees that may be awarded in this case would exceed the remaining amount required to meet the amount in controversy requirement").


OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

60. Here, Plaintiff seeks attorney's fees under multiple statutes, including RCW 49.52.070, and fees may therefore be considered for purposes of calculating the amount in controversy. *See e.g.* Complaint ¶13.4.

61. Prospective attorneys' fees are properly included in the amount in controversy for purposes of evaluating CAFA jurisdiction. *See Arias*, 936 F.3d at 922 ("[W]hen a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy."). Under the Ninth Circuit's well-established precedent, twenty-five (25) percent of the common fund is generally used as a benchmark for an award of attorneys' fees. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); *Barcia v. Contain-A-Way, Inc.*, No. 07cv938-IEG-JMA, 2009 WL 587844, at *5 (S.D. Cal. Mar. 6, 2009) ("In wage and hour cases, '[t]wenty-five percent is considered a benchmark for attorneys' fees in common fund cases.'") (quoting *Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2008 WL 3385452, at *4 (N.D. Cal. Aug. 8, 2008)); *Lucas v. Michael Kors Inc.*, No. CV 18-1608-MWF (MRWx), 2018 WL 2146403, at *12 (C.D. Cal. May 9, 2018) (collecting cases applying a 25% benchmark in CAFA wage and hour cases).

62. Kohl's has established the total amount in controversy, exclusive of attorneys' fees is, on the low end, $4,452,247.67. Plaintiff has not indicated she will seek less than twenty-five (25) percent of a common fund in attorneys' fees. Kohl's denies any such attorneys' fees are owed to Plaintiff or putative class members. However, solely for purposes of this jurisdictional analysis, Kohl's rely on Plaintiff's allegations that the attorneys' fees are owed. Given the valuation of this matter, the attorneys' fees portion is valued at $1,113,061.92.

**D. <u>The Total Amount in Controversy Exceeds $5,000,000</u>**

63. This calculation does not take into account Plaintiff's additional claimed damages for off-the-clock work, overtime, unlawful deductions and rebates, and paid sick leave, which



OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

would only increase the amount in controversy further over the jurisdictional limit. The amounts included in Kohl's amount in controversy calculation are included in the chart below.

| **Damage Theory** | **Amount in Controversy** |
|---|---|
| Meal Period Penalties | $1,661,286.44 - $2,768,810.74 |
| Double Damages for Meal Period Penalties | $1,661,286.44 - $2,768,810.74 |
| Rest Period Penalties | $554,067.92 - $923,446.54 |
| Double Damages for Rest Period Penalties | $554,067.92 - $923,446.54 |
| Minimum Wage Claims | Not included in this analysis. |
| Double Damages for Unpaid Minimum Wage | Not included in this analysis |
| Overtime Claims | Not included in this analysis |
| Double Damages for Unpaid Overtime | Not included in this analysis |
| Unlawful Deductions and Rebates | Not included in this analysis. |
| Paid Sick Leave Claims | Not included in this analysis. |
| Attorneys' Fees | $1,107,677.18 – $1,846,128.64 |
| **AMOUNT IN CONTROVERSY** | **$5,538,385.90 - $9,230,643.20** |

## V. THE OTHER PREREQUISITES FOR REMOVAL HAVE BEEN SATISFIED

64. In accordance with 28 U.S.C. § 1446(a), this Notice of Removal is filed in the District Court of the United States in which this action is pending. The Superior Court of Washington, King County, is located within the Western District of Washington. Therefore, venue is proper in this Court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

65. In accordance with 28 U.S.C. § 1446(d), Kohl's counsel shall serve Plaintiff with a copy of this Notice of Removal and will file a Notice with the Clerk for the King County Superior


OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

Court. Kohl's shall promptly file a Notice of Compliance of these requirements in this Court promptly after completion.

66. As required by Fed. R. Civ. P. 7.1, Kohl's concurrently files its Corporate Disclosure Statement with this filing of the Notice of Removal.

67. In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon Kohl's are attached as Exhibits to this Notice. *See* Paynter Decl. ¶9.

## VI. CONCLUSION

Based on the foregoing, removal is proper to this Court. If any question arises as to the propriety of the removal of this action, Kohl's respectfully requests the opportunity to conduct jurisdictional discovery and to present evidence and argument in support of its position that this case is subject to removal.

Respectfully submitted this 3rd day of December 2025.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: */s/ Adam T. Pankratz*
By: */s/ E. Ashley Paynter*
By: */s/ Nohl C. Speck*
Adam T. Pankratz, WSBA #50951
E. Ashley Paynter, WSBA #58857
Nohl C. Speck, WSBA #56889
1201 Third Avenue, Suite 5150
Seattle, WA 98101
Tel.: (206) 693-7057/Fax: (206) 693-7058
Email: adam.pankratz@ogletree.com
ashley.paynter@ogletree.com
nohl.speck@ogletree.com

*Attorneys for Defendant Kohl's, Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of December 2025, I served the foregoing NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT via the method(s) below on the following parties:

Douglas Han, WSBA #59429
Shunt Tatavos-Gharajeh, WSBA #59424
April Rhéaume, WSBA #57119
JUSTICE LAW CORPORATION
751 North Fair Oaks Avenue, Suite 101
Pasadena, CA 91103
Telephone: (818) 230-7502
Facsimile: (818) 230-7259
Email: dhan@justicelawcorp.com
statavos@justicelawcorp.com
arheaume@justicelawcorp.com

*Attorneys for Plaintiff Rachelle Pescador*

☒ by **electronic** means through the Court's Case Management/Electronic Case File system, which will send automatic notification of filing to each person listed above.

☐ by **mailing** a true and correct copy to the last-known address of each person listed above. It was contained in a sealed envelope, with postage paid, addressed as stated above, and deposited with the U.S. Postal Service in Seattle, Washington.

☐ by **e-mailing** a true and correct copy to the last-known email address of each person listed above.

SIGNED THIS 3rd day of December 2025 at Seattle, Washington.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: */s/ Jordan E. Sheets*
Jordan E. Sheets, Practice Assistant
jordan.sheets@ogletree.com